[No. B134741. Second Dist., Div. Three. Apr. 20, 2000.]

CAROL EARLEY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
WASHINGTON MUTUAL BANK, F.A., Real Party in Interest.

## COUNSEL

Fenigstein & Kaufman, Harold J. Tomin, John L. Johnson III; Salerno & Dassoff, Nancy L. Dassoff and Paul R. Salerno for Petitioners.

Saperstein, Goldstein, Demchak & Baller, David Borgen and Laura L. Ho as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Gibson, Dunn & Crutcher, Chad S. Hummel, Deborah J. Clarke, Ellen L. Farrell and Paul DeCamp for Real Party in Interest.

## OPINION

**CROSKEY, J.**—This case arises out of a claim made by petitioners on behalf of themselves and others similarly situated to recover unpaid overtime compensation. Petitioners, Carol Earley, Donna Alvarez and Martin Garcia (hereafter petitioners), seek review of the trial court's order, made as part of a class certification process, which required a particular notice to be mailed to absent class members giving them the option of "opting out" of petitioners' class action to recover unpaid overtime compensation from defendant and real party in interest herein, Washington Mutual Bank, F.A., successor in interest to Home Savings of America, F.S.B. (hereafter defendant). Petitioners ask us to conclude that such notice was improper and to direct the trial court to vacate the order adopting it and directing its distribution.

Petitioners question the propriety of the inclusion in the proposed notice to class members of a warning that absent class members might be held

liable for the attorney's fees and costs of defendant should the suit be unsuccessful. To resolve the matter, we have to determine (1) if relevant provisions of the Labor Code allow for a successful defendant's recovery of attorney's fees in a case involving a claim for overtime compensation, and (2) whether absent class members, who have failed to "opt out," may be held liable for a successful defendant's fees or costs. As we explain, we answer both of these questions in the negative and, therefore, we will issue a writ of mandate which grants, in part, the relief requested by petitioners.

## FACTUAL AND PROCEDURAL BACKGROUND

Prior to May 20, 1999,[1] petitioners filed a complaint alleging that defendant had imposed alternative work week schedules on a number of its employees. Such schedules required those employees to work either 10 hours per day for four days or 11.5 hours per day for three days. Petitioners alleged that these scheduling changes were accomplished by defendant without complying with Labor Code former section 1183.5 or a relevant wage order previously issued by the California Industrial Welfare Commission; as a result, defendant was required to pay the overtime rate to such employees for all time worked over eight hours per day. Plaintiffs further alleged that more than 500 of defendant's employees were affected[2] and that, given the predominance of questions of fact and law, class action certification of the prosecution of these claims was appropriate.

On August 13, 1999, the trial court ordered that a particular notice be mailed to class members by no later than September 10, 1999. This order was the result of the failure of petitioners and defendant to agree on the content of such notice relative to the "likely" exposure of absent class members to attorney's fees and costs to which defendant might be entitled if it were successful in the action. As is relevant to the issues before us, the notice which the trial court directed be sent provided: "Under California Labor Code Section 218.5, the prevailing parties are entitled to recover their attorneys' fees and costs. If plaintiffs prevail at trial, Home Savings likely will be liable for all or part of their attorneys' fees and costs in presenting the class claims. If Home Savings prevails, plaintiffs likely will be liable for all or part of Home Savings' attorneys' fees and costs in defending the class claims. If you choose to remain a class member, you may be liable for some

---

[1] This is the date on which petitioners filed their first amended complaint, the operative pleading herein. The record does not disclose the exact date on which this action was originally commenced.

[2] However, the members of the subclass which were identified by petitioners for receipt of the subject notice numbered only 60.

of Home Savings' fees and costs if Home Savings prevails. Plaintiffs contend that Home Savings has no right to recover fees under Section 218.5 even if Home Savings prevails."[3]

Petitioners responded to the order requiring the above notice by filing the instant petition for writ relief, arguing that Labor Code section 218.5[4] has no application to this case, but rather Labor Code section 1194[5] is the controlling statute. The latter statute authorizes an award of attorney's fees in actions seeking to recover unpaid overtime claims only to a successful plaintiff; that is, it is a "one-way" attorney's-fee-shifting statute which would preclude any claim by a defendant even if it had prevailed in the underlying action. In addition, and in any event, petitioners contend that *absent* class members cannot be held liable for a successful defendant's attorney's fees and costs. Based on these two arguments, petitioners ask us to direct the trial court to vacate its order regarding the contents of the notice to class members. Defendant disputes each of petitioners' contentions and argues that the notice reflects applicable law and is proper.

On September 10, 1999, we issued an alternative writ of mandate and stayed all further proceedings in the trial court pending our resolution of these questions.

---

[3]Petitioners had requested that the court not include such language, but rather provide in the notice to the class only the following with respect to the issue of attorney's fees:

". . . Class Counsel represent the Class on a contingent basis, without any charge to Class members. Any reimbursement of costs, or award of fees, to Class Counsel will be made by the Court from either any recovery for the Class, or directly, from Home Savings. You will *not* be responsible for any court costs to Home Savings."

[4]Labor Code section 218.5, enacted in 1986, provides: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. This section shall not apply to an action brought by the Labor Commissioner. This section shall not apply to a surety issuing a bond pursuant to Chapter 9 (commencing with Section 7000) of Division 3 of the Business and Professions Code or to an action to enforce a mechanics lien brought under Chapter 2 (commencing with Section 3109) of Title 15 of Part 4 of Division 3 of the Civil Code."

[5]Labor Code section 1194, as amended in 1991, provides:

"(a) Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

"(b) The amendments made to this section by Chapter 825 of the Statutes of 1991 shall apply only to civil actions commenced on or after January 1, 1992."

## Issues Presented

We have two issues to resolve. First, do the provisions of Labor Code section 1194[6] control the question of whether attorney's fees could be awarded in defendant's favor or does section 218.5 also apply? Second, can *absent* class members, at least in those cases where class membership is subject to an opt-out provision, be held liable for a defendant's attorney's fee and/or costs in the event the class action is not successful?

## Discussion

■ When presented with pure questions of law, our review standard is de novo (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799 [35 Cal.Rptr.2d 418, 883 P.2d 960].) The determination of the applicable Labor Code section governing an overtime claimant's rights and obligations regarding an award of attorney's fees involves settled principles of statutory construction. The extent to which absent class members should be exposed to personal liability for a successful defendant's attorney's fees and costs is a matter dependent upon questions of public policy as well as statutory interpretation. These are questions of law subject to our independent review. (*Californians for Population Stabilization v. Hewlett-Packard Co.* (1997) 58 Cal.App.4th 273, 294 [67 Cal.Rptr.2d 621].)

### 1. *The Provisions of Section 1194 Control the Award of Attorney's Fees in Overtime Claim Cases*

■ Essentially, petitioners contend that section 1194, subdivision (a), is a specific statute amended by the Legislature in 1991 to provide additional remedies to an employee who successfully prosecutes a claim for unpaid overtime compensation. Those additional remedies include attorney's fees and interest. It allows a recovery *only* for the successful employee. It is a one-way fee-shifting provision and does *not* extend a similar right to a successful employer defendant. Given these provisions, and the legislative history of this amendment, which was made five years *after* the enactment of the more general provisions contained in section 218.5, petitioners argue that only section 1194, subdivision (a), should be applied in this case. They contend that to recognize the applicability of section 218.5, as the trial court did, would frustrate the legislative purpose behind the very specific and focused provisions of section 1194.

Defendant counters that, properly construed, section 218.5 does not conflict with section 1194 and *both* sections may be applied to a case such as the

---

[6]Unless otherwise indicated, all statutory references are to the Labor Code.

one before us. Section 218.5 entitles the prevailing party, in *any* action for "wages," to a *mandatory* award of costs and attorney's fees *if*, as is the case here, any party requests costs and fees at the start of the case. According to defendant, section 1194, subdivision (a), is simply an overlapping statute which entitles a prevailing overtime claimant to recover attorney's fees, costs, and interest regardless of whether such relief was sought at the outset of the litigation. Defendant argues that a prevailing employer will be entitled to relief if the conditions of section 218.5 are satisfied, while a prevailing employee will be entitled to relief if the conditions of either section 1194, subdivision (a), or section 218.5 are satisfied. Thus, defendant concludes, neither statute precludes operation of the other, so there is no conflict, and both can and should be applied.

After careful review, we find ourselves in agreement with petitioners. We do not, as does defendant, see petitioners' argument as depending upon a conclusion of implied repeal of section 218.5 by the subsequent amendment of section 1194. Rather, it is a matter of the proper interpretation of both sections so as to harmonize their provisions. As stated above, defendant argues that such harmonization is best accomplished by the recognition that both sections should apply. We believe, however, that the more reasoned approach is to focus on the obvious legislative purpose of giving special treatment to claims for unpaid overtime compensation.

Prior to the 1991 amendment to section 1194, that section read (since 1973): "Any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to such employee is entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage or overtime compensation, together with costs of suit, notwithstanding any agreement to work for a lesser wage."[7] Under section 1194, as it read prior to 1991, an overtime claimant had no right to recover attorney's fees or interest; only "costs of suit" could be recovered.

Thus, before the enactment of section 218.5 in 1986, the Legislature had given *special* treatment to claims for nonpayment of the legal *minimum* wage and *overtime* compensation. While it might be argued that the enactment of

---

[7]Section 1194 was originally enacted in 1913 to mandate minimum wages, maximum hours and overtime pay for women and children. Initially, private civil actions were allowed only for recovery of minimum wages. The enforcement of overtime compensation rights was left to the state; however, in 1961, section 1194 was amended to provide that the private right to bring a civil action would extend to include overtime claims and the employee was also given the right to recover costs of suit. Subsequently, in 1972, the Legislature again amended section 1194 and extended the right to sue for minimum wages to "any employee," not just women and children, and, a year later, did the same thing with respect to overtime compensation claims.

section 218.5 had the effect of extending to a successful overtime compensation claimant the right to recover "reasonable attorney's fees," we know of no case which has so held.[8] Moreover, that the Legislature never regarded section 218.5 as applicable to actions for *minimum* wage or *overtime* compensation was made clear by the 1991 amendment to section 1194. The Legislature must be deemed to have been aware of section 218.5 when it acted to amend section 1194. (See *In re Michael G.* (1988) 44 Cal.3d 283, 293 [243 Cal.Rptr. 224, 747 P.2d 1152].) The legislative history of that amendment of section 1194 demonstrates that its provisions had been negotiated with the Department of Industrial Relations to provide to *overtime* compensation claimants the *additional* remedies of interest, liquidated damages and attorney's fees as a "needed disincentive to violation of *minimum* wage laws." (Sen. Rules Com., Analysis of Sen. Bill No. 955 (1991-1992 Reg. Sess.) as amended Sept. 10, 1991, italics added.) An analysis of the bill submitted to the Senate in advance of the vote stated that, "[t]hese additional remedies are especially necessary in situations where the employees themselves pursue a private action to recover unpaid wages or overtime." (*Ibid.*)

An examination of the bill's legislative history also demonstrates that in a civil action to recover unpaid overtime compensation, the "existing law," provided only for "costs of suit," not attorney's fees. There was no mention or recognition of section 218.5 or its reciprocal attorney's fee provisions as having any possible application to an overtime compensation claim. Thus, the Legislature clearly intended to give special treatment to overtime compensation claims and to create a one-way fee-shifting right for a successful employee; but no similar right was recognized for an employer who successfully defended such a claim. Obviously, the Legislature did not regard the general provisions of section 218.5 as applicable to overtime claims. If we were to hold otherwise, we would, by such conclusion, create the very type of statutory conflict which we are enjoined to avoid. (*Stop Youth Addition,*

---

[8]Defendant argues that section 203, which is found in the same chapter of the Labor Code as section 218.5, has been construed as applying to overtime claims. Defendant cites *Ghory v. Al-Lahham* (1989) 209 Cal.App.3d 1487 [257 Cal.Rptr. 924] for this proposition. However, *Ghory* says no such thing. Section 203 provides in pertinent part: "If an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date. . . ." The *Ghory* court's discussion of the appellant's entitlement to overtime compensation rested upon section 1173 et seq. (i.e., in the same chapter where § 1194 is located), not on section 203. The *Ghory* court simply held that since respondents did not address the question of appellant's entitlement to penalty wages under section 203, "[w]e interpret respondents' silence on the issue as tacit recognition that *if* appellant is entitled to overtime compensation, he is entitled to penalty wages as well; and that the amount claimed by appellant is accurate." (209 Cal.App.3d at p. 1492, italics added.) *Ghory* is not at all inconsistent with the conclusion which we reach regarding section 218.5 and its inapplicability to overtime compensation claims.

*Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 569 [71 Cal.Rptr.2d 731, 950 P.2d 1086] [there is a strong presumption against the implied repeal of one statute by another with apparently conflicting language and the " ' " 'courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together' " ' "].)

Thus, if an employee is unsuccessful in a suit for minimum wages or overtime, section 1194 does not permit a prevailing employer to recover fees or costs. "[S]tatutes expressly permitting fees for only a particular prevailing party have been interpreted as denying fees for the other party, even if it prevailed." (*Brown v. West Covina Toyota* (1994) 26 Cal.App.4th 555, 561 [32 Cal.Rptr.2d 85] (*Brown*), disapproved on other grounds in *Murillo v. Fleetwood Enterprises, Inc.* (1998) 17 Cal.4th 985, 995-996 [73 Cal.Rptr.2d 682, 953 P.2d 858].) Nonetheless, defendant argues that sections 218.5 and 1194 should be read together to allow the prevailing party (be it the employer or employee) to recover fees and costs in any overtime compensation claim case. However, " 'one-sided statutory and judicially mandated fee-shifting provisions serve a specific public policy which would be vitiated by the grant of reciprocity.' " (*Brown, supra,* 26 Cal.App.4th at p. 562, quoting *Alcott v. M. E. V. Corp.* (1987) 193 Cal.App.3d 797, 800 [238 Cal.Rptr. 520].)

Accordingly, section 1194, as the one-way fee-shifting statute made specifically applicable by the Legislature to overtime compensation claims, should be recognized as the *sole* statutory authority for the award of attorney's fees upon the successful prosecution of such claims. (*Brown, supra,* 26 Cal.App.4th at p. 562.). In *Brown,* the court addressed the same kind of conflict as the one raised by the defendant here. A car buyer lost a suit he brought under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), commonly known as the "lemon law," and the seller tried to recover defense fees under the Rees-Levering Act (Civ. Code, § 2981 et seq.), which applied to any action on a vehicle purchase contract. However, the court found that the Song-Beverly Consumer Warranty Act's one-way fee provision was a remedial measure intended to protect consumers. (26 Cal.App.4th at pp. 561-562.) The court then found that the most "reasonable" interpretation of the two statutes which would " 'avoid nullification of one statute by another' " was to read the Rees-Levering Act's two-way fee provision as inapplicable to an action brought under the Song-Beverly Consumer Warranty Act. (*Id.* at pp. 565-566.) Only in that way could Song-Beverly's public policy objective of protecting car buyers be preserved.

The reasoning of *Brown* is directly applicable here, where there is a clear public policy, embodied in section 1194, that is specifically directed at

the enforcement of California's minimum wage and overtime laws for the benefit of workers. (See *Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1148 [37 Cal.Rptr.2d 718] [enforcement of overtime laws reflects broad public interest].) The only reasonable interpretation which would avoid nullification of section 1194 would be one which bars employers from relying on section 218.5 to recover fees in any action for *minimum* wages or *overtime* compensation. Section 218.5 would still be available for an action brought to recover nonpayment of contractually agreed-upon or bargained-for "wages, fringe benefits, or health and welfare or pension fund contributions."[9]

■ Such a harmonization of these two sections is fully justified. An employee's right to wages and overtime compensation clearly have different sources. Straight-time wages (above the minimum wage) are a matter of private contract between the employer and employee. Entitlement to overtime compensation, on the other hand, is mandated by statute and is based on an important public policy. In *Gould v. Maryland Sound Industries, Inc., supra,* 31 Cal.App.4th 1137 the court stated: "The duty to pay overtime wages is a duty imposed by the state; it is not a matter left to the private discretion of the employer. (Lab. Code, § 1173; *Monzon v. Schaefer Ambulance Service, Inc.* (1990) 224 Cal.App.3d 16, 29 [273 Cal.Rptr. 615].) California courts have long recognized [that] wage and hours laws 'concern not only the health and welfare of the workers themselves, but also the public health and general welfare.' [Citation.] In *Monzon, supra,* we observed one purpose of requiring payment of overtime wages is ' "to spread employment throughout the work force by putting financial pressure on the employer . . . ." ' (224 Cal.App.3d at p. 39.) Thus, overtime wages are another example of a public policy fostering society's interest in a stable job market. [Citation.] Furthermore, as we have previously explained, the Legislature's decision to criminalize certain employer conduct reflects a determination [that] the conduct affects a broad public interest. . . . [For example,] [u]nder Labor Code sections 1174 and 1175 it is a crime for an employer to fail to keep or refuse to furnish payroll records showing the hours worked daily by, and wages paid to, its employees. Under Labor Code section 1199 it is a crime for an employer to fail to pay overtime wages as fixed by the Industrial Welfare Commission." (*Id.* at pp. 1148-1149.)

There can be no doubt that the one-way fee-shifting rule in section 1194 was meant to "encourage injured parties to seek redress—and thus simultaneously enforce [the minimum wage and overtime laws]—in situations

---

[9]Of course, to the extent that there is any irreconcilable conflict between these two sections, section 1194, as the later-enacted and more specific statute, would supersede section 218.5 as a matter of statutory construction. (See *Governing Board [Rialto Unified School Dist.] v. Mann* (1977) 18 Cal.3d 819, 828 [135 Cal.Rptr. 526, 558 P.2d 1]; *Rose v. State of California* (1942) 19 Cal.2d 713, 723 [123 P.2d 505].)

where they otherwise would not find it economical to sue." (*Covenant Mutual Ins. Co. v. Young* (1986) 179 Cal.App.3d 318, 325 [225 Cal.Rptr. 861].) To allow employers to invoke section 218.5 in an overtime case would defeat that legislative intent and create a chilling effect on workers who have had their *statutory* rights violated. Such a result would undermine statutorily-established public policy. That policy can only be properly enforced by a recognition that section 1194 alone applies to overtime compensation claims.

### 2. *Absent Class Members Cannot Be Held Liable for a Successful Defendant's Attorney's Fees and Costs*

 In addition to concluding that the provisions of section 1194 control the award of attorney's fees in overtime claims cases, as an alternative ground for the result we reach in this matter, we also conclude that absent class members, at least those identified on an "opt-out" basis, cannot be held liable for a successful defendant's attorney's fees or costs. In reaching this result, we have not been aided by any direct authority; indeed, this appears to be a very novel issue. Instead, we have looked at the rationale behind treating *absent* class members differently than other litigants, as that rationale has been expressed in various cases. For example, in *Phillips Petroleum Co. v. Shutts* (1985) 472 U.S. 797, 811 [105 S.Ct. 2965, 2974, 86 L.Ed.2d 628], the defendant sought to avoid class certification by arguing that the absent plaintiffs were not amenable to jurisdiction in the Kansas state courts. The United States Supreme Court in *Phillips Petroleum* noted that fewer burdens are imposed upon the absent class plaintiffs than upon the absent defendants in nonclass suits, and, as a result, the due process clause does not afford such plaintiffs as much protection from state court jurisdiction as it does absent nonclass defendants. (472 U.S. at p. 811 [105 S.Ct. at p. 2974].) The Supreme Court emphasized how differently the absent class plaintiffs are treated from the absent class defendant. "Besides [a] continuing solicitude for their rights, absent plaintiff class members are not subject to other burdens imposed upon defendants. They need not hire counsel or appear. They are almost never subject to counterclaims or cross-claims, *or liability for fees or costs.* Absent plaintiff class members are not subject to coercive or punitive remedies. Nor will an adverse judgment typically bind an absent plaintiff for any damages, although a valid adverse judgment may extinguish any of the plaintiff's claims which were litigated." (*Id.* at p. 810 [105 S.Ct. at pp. 2973-2974], italics added, fn. omitted.)

In *Wright v. Schock* (9th Cir. 1984) 742 F.2d 541, a case involving certain banks' practices in purchasing secured promissory notes, the trial court granted summary judgment in favor of the defendant banks and dismissed

them from the case *before* ruling on the plaintiff's motion for class certification. The plaintiff objected that the trial court's failure to first certify the class deprived him of the right to spread defendants' $60,000 cost claim over the entire class. The *Wright* court answered by stating that the trial court's order did not prejudice plaintiff since "[a]bsent class members have no obligation to pay attorneys' fees and litigation costs, *except when they elect to accept the benefit of the litigation.* [Citations.]" (*Id.* at p. 545, italics added.)[10] While these federal authorities were decided in the context of rule 23 of the Federal Rules of Civil Procedure (28 U.S.C.), California's statutory authority for class actions, Code of Civil Procedure sections 382 through 384, requires no different analysis.

Only one published case in California has addressed the issue of absent class members' liability for costs. In *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819 [251 Cal.Rptr. 530], a judgment was entered in favor of the defendant bank in a class action which challenged certain of its banking practices as they related to trust and agency accounts. After entry of judgment, the trial court had ordered that the entire class of plaintiffs, rather than just the named plaintiffs, should bear the costs of the trial on a pro rata basis. The defendant bank appealed, arguing that the trial court's order was an abuse of discretion which would require it to pursue each member of the class for a fraction of the total cost burden.

The *Van de Kamp* court agreed with the bank and reversed the cost allocation order, concluding that the *named* plaintiffs should be jointly and severally liable for the costs claimed by the bank, because it was they, as class representatives, who "must balance the risk of liability against their potential recovery." (*Van de Kamp v. Bank of America, supra,* 204 Cal.App.3d at p. 869.) The court quoted with approval the comments of Justice Clark in his dissent in *Civil Service Employees Ins. Co. v. Superior Court* (1978) 22 Cal.3d 362 [149 Cal.Rptr. 360, 584 P.2d 497] (*Civil Service Employees*). In *Civil Service Employees* the majority had imposed upon a

---

[10](Other federal cases are in accord, see *Lamb v. United Security Life Company* (S.D. Iowa 1973) 59 F.R.D. 44, 49 [holding that, given the language in rule 23(a)(1) of the Fed. Rules Civ. Proc. (which provides that a class action may be maintained *only* when the class is so numerous that joinder of all members is impracticable), absent class members are not "parties to the action" and therefore "would not be liable for any costs or expenses assessed against the representative parties plaintiff"]; *In re "Agent Orange" Product Liability Litigation* (E.D.N.Y. 1983) 100 F.R.D. 718, 732 [the court provided in its approved notice to class members that they "will not be charged with costs or expenses whether or not [they] remain a member of the class"]; *Gay v. Waiters' & Dairy Lunchmen's U., Local No. 30* (N.D.Cal. 1980) 86 F.R.D. 500, 502, fn. 3 ["Because the representative plaintiffs are themselves jointly and severally liable for the whole amount, there would normally be little incentive to pursue other class members"].)

defendant the costs of sending a notice to class members. Justice Clark expressed the view of the minority that this constituted a deprivation of property without due process of law.

In discussing the issue, Justice Clark rejected the idea that imposing the costs of noticing an entire class could be justified by the possibility that the defendant, if successful in the action, could ultimately recover such costs from the members of the class. In language relevant to the issue before the *Van de Kamp* court and now before us, he pointed out that this was not a *realistic* possibility because "to allow defendant to single out a solvent plaintiff who takes no active part in the litigation, requiring him to pay all of the notice costs . . . is monstrous. A pro rata approach would also be manifestly unfair. It would be patently inequitable to permit defendant to recover against potential class members who received notice and chose to opt out of the litigation—frequently realizing that the game is not worth the candle. *Defendant's recovery would be no less unfair as to those class members who chose not to incur the expense of consulting an attorney and who did not have the foresight to opt out.* Indeed, the mind is boggled by the possibility that defendant would record its judgment for notice costs against the class and proceed to enforce it by execution or garnishment against each member's home or personal property, constantly increasing the costs of a class member who took no part in the litigation. Plaintiff may not be permitted to use *without consent* the resources or credit of unnamed class members to finance the action." (*Civil Service Employees, supra,* 22 Cal.3d at p. 383 (dis. opn. of Clark, J.), italics added.) Notably, Justice Clark's analysis of *this* discrete issue, as opposed to the issue of due process, was not inconsistent with the majority's opinion. Just as did the *Van de Kamp* court, we find this analysis to be persuasive on the question of whether costs can be imposed on absent class members.

We agree with the *Van de Kamp* court that it would be entirely appropriate to place the entire cost burden on the named representative plaintiff(s) who has (have) chosen to instigate the action rather than on the absent class members. As the *Van de Kamp* court pointed out, "the imposition of the cost burden on the entire class of plaintiffs (1) increases the costs of the litigation and such costs may be prohibitive, and (2) is unfair to unnamed plaintiffs who took no part in the litigation. While imposition of the entire cost burden on the named plaintiffs may have a chilling effect on the willingness of plaintiffs to bring class action suits, this effect easily may be outweighed by the potential recovery. All potential litigants [i.e., the representative plaintiffs] must weigh costs of suit against likelihood of success and possible recovery before deciding to file suit. Those who choose to take the risks of litigation should be the ones who bear the cost when they are unsuccessful,

not those who did not make the choice." (*Van de Kamp v. Bank of America, supra,* 204 Cal.App.3d at p. 869.)

■ A class action is a representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties. (*Southern California Edison Co. v. Superior Court* (1972) 7 Cal.3d 832, 839-840 [103 Cal.Rptr. 709, 500 P.2d 621].) The representative parties not only make the decision to bring the case in the first place, but even after class certification and notice, they are the ones responsible for trying the case, appearing in court, and working with class counsel on behalf of absent members. The structure of the class action does not allow absent class members to become active parties,[11] since "to the extent the absent class members are compelled to participate in the trial of the lawsuit, the effectiveness of the class action device is destroyed." (*Danzig v. Superior Court* (1978) 87 Cal.App.3d 604, 612 [151 Cal.Rptr. 185] [holding that before a defendant can propound discovery to absent class members, it must be shown that such discovery is necessary to the proper trial of class issues, is not unduly burdensome to absent class members and does not have the purpose, nor will it have the effect, of reducing the class size].) The very purpose of the class action is to "relieve the absent members of the burden of participating in the action." (*Id.* at p. 612.)

As the Supreme Court noted nearly 30 years ago in discussing the significance and importance of the class action device: " 'Modern society seems increasingly to expose men to . . . group injuries for which individually they are in a poor position to seek legal redress, either because they do not know enough or because such redress is disproportionately expensive. If each is left to assert his rights alone if and when he can, there will at best be a random and fragmentary enforcement, if there is any at all. This result is not only unfortunate in the particular case, but it will operate seriously to impair the deterrent effect of the sanctions which underlie much contemporary law. The problem of fashioning an effective and inclusive group remedy is thus a major one.' [Citation.]" (*Vasquez v. Superior Court* (1971) 4 Cal.3d 800, 807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].)

---

[11]Absent class members may be "parties" for certain purposes, but for other purposes they are not. (*In re Cement Antitrust Litigation* (9th Cir. 1982) 688 F.2d 1297, 1310, affd. by an equally divided court (1983) 459 U.S. 1191 [103 S.Ct. 1173, 75 L.Ed.2d 425].) The term "party" has been used loosely by courts such as *National Solar Equipment Owners' Assn. v. Grumman Corp.* (1991) 235 Cal.App.3d 1273, 1281-1282 [1 Cal.Rptr.2d 325] ("unnamed class members are 'parties' for purposes of discovery"). In fact, the California Supreme Court's ruling allowing limited discovery against unnamed plaintiffs was based, as in the common fund cases, on the reasoning that unnamed class members receive an "immediate benefit" from the prosecution of a class action, not on the conclusion that they are "parties" for all purposes under Code of Civil Procedure section 382. (*Southern California Edison Co. v. Superior Court, supra,* 7 Cal.3d at p. 840.)

█ In our view, a potential liability for defense costs to class members who are required to opt-out to avoid such membership,[12] would undermine the effectiveness of the group remedy provided by the class action. Defense fees and costs could easily dwarf the potential overtime compensation recovery each worker might obtain. With potential risks far outweighing potential benefits, workers may well forego asserting their statutory wage and hour rights. In particular, exposing absent class members to defense fees and costs in an overtime compensation claim case magnifies the chilling effect that an application of section 218.5 would have on enforcement of the overtime laws. Employers who are violating the overtime laws would be emboldened to continue in the reasonable belief that individual employees' fears of being held liable for court costs would mean employers would be less likely to face a broad-based, class action suit to recover such improperly withheld overtime.

Such a result would undermine not only a strong public policy but also judicial efficiency. It would encourage absent class members to opt out in order to bring their own claims individually. If an individual wage claimant is going to be held liable for defense fees, it makes much more economic sense to be liable only for the defense of an individual action rather than for the defense of a class action. Bringing an individual case also allows more control over the litigation than as an absent class member. However, the end result of this is to foster repetitious litigation of essentially identical claims by individuals whose claims could otherwise be resolved in one class action.

We believe that the foregoing authorities demonstrate that the better rule is that the only time absent class members who have failed to opt-out should be liable for fees and costs is when the class *prevails* and the class

---

[12]Contrast this with what happens under the Fair Labor Standards Act (FLSA), 29 United States Code section 216(b). In order to be bound by a judgment under FLSA, an overtime claimant must submit a written consent to the court. Once the employee opts in, he or she becomes a "party plaintiff" under section 216(b), and must be named individually in the action to have standing. (See *OTR Drivers v. Frito-Lay, Inc.* (10th Cir. 1993) 988 F.2d 1059, 1061, fn. 6 [contrasting class action pleading on behalf of "similarly situated" employees with collective action requirement of naming individual party plaintiffs].) Unlike an unnamed class member, a FLSA "party plaintiff" is thus truly a "party" who has made an *affirmative choice* to participate actively in the collective action.

FLSA's opt-in procedure was enacted as a limitation on private FLSA plaintiffs. (See *Hoffmann-La Roche Inc. v. Sperling* (1989) 493 U.S. 165, 173 [110 S.Ct. 482, 487-488, 107 L.Ed.2d 480].) No such limitation exists under California law; it requires that absent class members be given the more favorable option of *opting out of a* class action. (See, e.g., *Trotsky v. Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134, 151-152 [121 Cal.Rptr. 637]; *Home Sav. & Loan Assn. v. Superior Court* (1974) 42 Cal.App.3d 1006, 1010 [117 Cal.Rptr. 485]; for a specific statutory direction to this effect in an unrelated area, see Civ. Code, § 1781, subd. (e)(1); see also Super. Ct. L.A. County, Local Rules, rule 15.18 (f)(4)(b), (c), (d) & (e).)

members accept the benefit of a common fund recovery. Only then are they responsible for a pro rata share of the *class counsel's* attorney's fees and costs under the equitable theory that, when a winning plaintiff bears the cost of attorney's fees in creating a fund that benefits others, it is only fair that the plaintiff require the passive beneficiaries to bear a fair share of the litigation expenses. (See generally *Quinn v. State of California* (1975) 15 Cal.3d 162, 176 [124 Cal.Rptr. 1, 539 P.2d 761].)

The distinction between opting in and opting out bears mention here, because the trial court's order in this case seems to have been based on the premise, as argued by defendant, that a failure to opt-out is the equivalent of an affirmative election to accept the benefits of the litigation. We disagree. Whatever may be the merits of holding the absent class members liable for attorney's fees and costs who have expressly opted-in after being fully informed as to the risks involved, we can see no justification for imposing a similar burden on class members who have gained that status simply by doing nothing. To paraphrase Justice Clark, the named representative plaintiff should not be allowed to use *without consent* the resources or credit of unnamed class members to finance the action. (*Civil Service Employees, supra,* 22 Cal.3d at p. 383 (dis. opn. of Clark, J.).)

## DISPOSITION

The alternative writ is discharged. A peremptory writ of mandate shall issue directing the trial court to vacate its order of August 13, 1999, and to conduct further proceedings not inconsistent with the views expressed herein.[13] The stay of proceedings heretofore issued shall be vacated effective upon the filing of the remittitur by this court. Petitioners shall recover their costs incurred in this writ proceeding.

Klein, P. J., and Aldrich, J., concurred.

On April 26, 2000, the opinion was modified to read as printed above.

---

[13]We recognize that this is not all the relief actually requested by petitioners. They also sought an order directing the trial court to adopt *their* proposed class notice. It does not appear that the trial court ever undertook to consider the merits of petitioners' proposed notice or whether it should be modified in some way. By this decision, we express no opinion on petitioners' proposed notice. We leave that matter to the initial consideration of the trial court in light of the views we have expressed herein.