Filed 4/30/12

# IN THE SUPREME COURT OF CALIFORNIA

ANTHONY KIRBY et al.,

    Plaintiffs and Appellants,

    v.

IMMOOS FIRE PROTECTION, INC.,

    Defendant and Respondent.

S185827

Ct.App. 3 C062306

Sacramento County
Super. Ct. No. 07AS00032

In general, a prevailing party may recover attorney's fees only when a statute or an agreement of the parties provides for fee shifting. (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 606.) Labor Code section 218.5 requires the awarding of attorney's fees to the prevailing party "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions." This provision awards fees to the prevailing party whether it is the employee or the employer; it is a two-way fee-shifting provision. However, Labor Code section 218.5 "does not apply to any action for which attorney's fees are recoverable under [Labor Code] Section 1194." (Lab. Code, § 218.5.) Labor Code section 1194 provides that *employees* who prevail in an action for any unpaid "legal minimum wage or . . . legal overtime compensation" are entitled to recover attorney's fees. It is a one-way fee-shifting provision. (All subsequent unlabeled statutory references are to the Labor Code.)

1

In this case, plaintiffs Anthony Kirby and Rick Leech, Jr., sued defendant Immoos Fire Protection, Inc. (IFP) and multiple Doe defendants for violating various labor laws as well as the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.). The amended complaint stated seven claims, the sixth of which alleged the failure to provide rest breaks as required by section 226.7. The remedy for such a violation is "one additional hour of pay . . . for each work day that the . . . rest period is not provided." (§226.7, subd. (b); see *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1102 (*Murphy*).) Plaintiffs ultimately dismissed this claim with prejudice after settling with the Doe defendants. IFP subsequently moved for attorney's fees under section 218.5. The trial court awarded fees, and the Court of Appeal affirmed.

We granted review to consider when, if ever, a party who prevails on a section 226.7 action for an alleged failure to provide rest breaks may be awarded attorney's fees. We conclude, in light of the relevant statutory language and legislative history, that neither section 1194 nor section 218.5 authorizes an award of attorney's fees to a party that prevails on a section 226.7 claim. We accordingly reverse the judgment of the Court of Appeal on this claim and affirm the judgment on plaintiffs' other claims.

## I.

Plaintiffs' amended complaint, filed in August 2007, alleged six claims against IFP and a seventh claim naming the Doe defendants but not IFP. The first claim alleged that IFP engaged in 12 enumerated instances of unlawful and unfair business practices in violation of the UCL. The second claim alleged that IFP failed to pay plaintiffs owed wages at each pay period and upon plaintiffs' discharge, as sections 201, 203, and 204 require. The third claim alleged that IFP failed to pay overtime compensation, as sections 204.3, 510, and the applicable Industrial Welfare Commission (IWC) wage order require.

2

The fourth claim alleged that IFP paid plaintiffs wages that were less than those required by statute, regulation, and contract, in violation of section 223. The fifth claim alleged that IFP failed to provide plaintiffs with accurate, itemized wage statements, as required by section 226. The sixth claim alleged that IFP failed to provide plaintiffs with rest periods, as required by section 226.7.

The seventh claim alleged that 750 Doe defendants violated section 2810 by entering into contracts with IFP while knowing that the contracts did not provide sufficient funds to allow IFP to comply with all applicable labor and wage laws. Plaintiffs later amended this claim to identify defendants Shea Homes, Inc., Hilbert Homes, Inc., Meritage Homes of California, Inc., and D.R. Horton, Inc. (collectively, the builder defendants).

Plaintiffs subsequently settled with the builder defendants in agreements not made part of the record. In November 2008, plaintiffs moved for certification of a class action, but their motion was denied. In February 2009, plaintiffs dismissed with prejudice their complaint as to all claims and all parties.

In April 2009, IFP moved to recover attorney's fees from plaintiffs under section 218.5. Plaintiffs opposed the motion, arguing in part that section 1194 barred an award of fees to IFP. In June 2009, the trial court awarded fees to IFP "for [its] defense of the [first, sixth] and [seventh] causes of action." The trial court concluded that section 218.5 authorized an award of fees for plaintiffs' sixth claim, which alleged rest period violations. As for plaintiffs' first claim, invoking the UCL, the trial court explained that the claim incorporated allegations from the rest period claim. Regarding the seventh claim, asserting that the Doe defendants violated section 2810, the trial court reasoned that IFP was united in interest with the Doe defendants, defended the claim alone until the builder defendants were named, and continued to defend it after plaintiffs settled with the builder defendants until the claim was dismissed. In its fee motion, IFP impliedly

3

conceded that section 1194 barred a fee award on plaintiffs' second, third, fourth, and fifth claims because they involved or overlapped with plaintiffs' overtime cause of action. The trial court ordered plaintiffs to pay $49,846.05 in fees.

The Court of Appeal affirmed the award of fees as to the rest period claim, but reversed as to the section 2810 and UCL claims. Regarding the rest period claim, the Court of Appeal concluded that an award of fees was proper under section 218.5 because plaintiffs were seeking payment of "additional wages" for missed rest periods. The court rejected plaintiffs' argument that, because at least some of their claims fell under section 1194, the entire action was shielded from an award of fees under section 218.5. The court also rejected plaintiffs' alternative argument that the rest period claim is properly construed as a claim for a statutorily mandated minimum wage and is thus governed by section 1194's one-way fee-shifting provision in favor of employees, not employers.

The Court of Appeal reversed the trial court's fee award on the section 2810 claim, noting that the statute contains a one-way fee-shifting provision in favor of prevailing employees. (See § 2810, subd. (g).) The Court of Appeal also reversed the fee award on the UCL claim, explaining that any fees awarded to IFP for that claim were merely duplicative of those derived from the defense against the rest period claim. The Court of Appeal remanded for a determination as to the amount of fees expended solely to defend against the rest period claim. We granted plaintiffs' petition for review, but limited the issue to whether attorney's fees can be awarded under either section 1194 or section 218.5 to a party that prevails in a section 226.7 action.

## II.

We independently review questions of statutory construction. (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387-388.) In doing so, "it is well settled that we must look first to the words of the statute, 'because they

4

generally provide the most reliable indicator of legislative intent.' [Citation.] If the statutory language is clear and unambiguous our inquiry ends. 'If there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.' [Citations.] In reading statutes, we are mindful that words are to be given their plain and commonsense meaning. [Citation.] We have also recognized that statutes governing conditions of employment are to be construed broadly in favor of protecting employees. [Citations.] Only when the statute's language is ambiguous or susceptible of more than one reasonable interpretation, may the court turn to extrinsic aids to assist in interpretation. [Citation.]" (*Murphy*, *supra*, 40 Cal.4th at p. 1103.) We thus begin with the language of the two fee-shifting statutes at issue here: section 1194 and section 218.5.

Section 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit." Section 218.5 provides: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. . . . [¶] This section does not apply to any action for which attorney's fees are recoverable under Section 1194."

As noted above, section 1194 is a one-way fee-shifting statute, authorizing an award of attorney's fees only to employees who prevail on their minimum wage or overtime claims. Section 218.5 is a two-way fee-shifting statute, permitting an award of fees to either employees or employers who, as relevant

5

here, prevail on an "action brought for the nonpayment of wages." Prevailing employers cannot obtain attorney's fees under section 218.5, however, if the employees could have obtained such fees under section 1194 had they prevailed. (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1429 (*Earley*).)

In resolving the case before us, we must initially ask whether a section 226.7 claim is a claim for which attorney's fees could be awarded to a prevailing employee under section 1194. If so, then IFP may not be awarded fees under section 218.5 even though it prevailed on the rest period claim in this case. If not, then we must separately examine whether section 218.5 authorizes a fee award to IFP on plaintiffs' section 226.7 claim.

**A.**

Section 1194 entitles "any employee receiving less than the legal minimum wage or the legal overtime compensation . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . [and] reasonable attorney's fees . . . ." (§ 1194, subd. (a).) By its terms, section 1194 applies to claims for unpaid minimum wages or overtime compensation. Plaintiffs argue section 1194 should be construed to also include section 226.7 claims for failure to provide statutorily mandated meal and rest breaks. Section 226.7, subdivision (a) prohibits employers from requiring employees to work during an IWC-mandated rest or meal period. If an employer violates subdivision (a), subdivision (b) provides the remedy: "the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." (§ 226.7.)

Plaintiffs first contend that the required payment for missed meal or rest periods is tantamount to a statutorily prescribed minimum wage. Like minimum wage provisions that set a floor for employee wages, plaintiffs argue, section 226.7 establishes a minimum payment amount, imposes an obligation upon

6

employers, and is based on an important public policy. Second, pointing to the term "legal" in section 1194's reference to "legal minimum wage" and "legal overtime compensation," plaintiffs contend that use of the modifier is evidence that the Legislature intended a broader meaning. We find neither contention persuasive.

In construing a statute, we give its words their plain and commonsense meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.) The term "minimum wage" ordinarily refers to the statutory or administrative floor below which an employee's compensation may not fall. For example, in section 1182.12, the Legislature has provided that "on and after January 1, 2008, the minimum wage for all industries shall be not less than eight dollars ($8.00) per hour." Minimum wage provisions have also been contained in wage orders (see, e.g., Cal. Code Regs., tit. 8, § 11040, subd. 4 [provisions located in Minimum Wages subdivision]), and in some instances, the Legislature has enacted prevailing wage statutes that have been construed as minimum wage laws. (See *Metropolitan Water Dist. v. Whitsett* (1932) 215 Cal. 400, 417-418; *Road Sprinkler Fitters Local Union No. 669 v. G & G Fire Sprinklers, Inc.* (2002) 102 Cal.App.4th 765, 778-779 [applying section 1194 to prevailing wage claims under sections 1770-1774 ].) The term "overtime compensation" ordinarily refers to the statutory and administrative obligation to pay employees one-and-one-half times their regular rate of pay for work in excess of eight hours a day or 40 hours a week (and double the regular rate for work in excess of 12 hours a day or in excess of eight hours on any seventh day of a workweek). (§ 510; e.g., Cal. Code Regs., tit. 8, § 11160, subd. 3(A).)

Plaintiffs identify no sound reason to interpret section 1194's reference to "the legal minimum wage or the legal overtime compensation" in a manner that departs from these usual meanings. Nor does the use of the word "legal" before

"minimum wage" and "overtime compensation" support the broad reading plaintiffs urge. To the contrary, the text and history of the statute indicate that the Legislature intended "the legal minimum wage or the legal overtime compensation" to refer to ordinary minimum wage and overtime obligations.

As a textual matter, if plaintiffs were correct that a "legal minimum wage" refers broadly to any statutory or administrative compensation requirement or to any compensation requirement based on minimum labor standards, then section 1194's reference to "legal overtime compensation" would be mere surplusage. For, under plaintiffs' reading, overtime compensation would already be encompassed by the term "legal minimum wage." (See *Moyer v. Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230 [" 'If possible, significance should be given to every word, phrase, sentence and part of an act in pursuance of the legislative purpose' [citation]; 'a construction making some words surplusage is to be avoided.' [Citation.]"].)

The history of section 1194 also supports a commonsense reading of its terms. In 1913, the Legislature enacted "An act regulating the employment of women and minors . . . including a minimum wage . . . ." (Stats. 1913, ch. 324, p. 632, italics omitted.) The 1913 act included section 1194's predecessor, which provided: "Any employee receiving less than the *legal minimum wage* applicable to such employee shall be entitled to recover in a civil action the unpaid balance of the full amount of such minimum wage, together with costs of suit, notwithstanding any agreement to work for such lesser wage." (Stats. 1913, ch. 324, § 13, p. 637, italics added.) (The act's title and other provisions make clear that this section, though using the term "employee," applied only to women and minors.) The 1913 act also contained another provision, the predecessor to what is now section 1191, demonstrating that the Legislature used "legal minimum wage" and "minimum wage" interchangeably: "For any occupation in which a

8

*minimum wage* has been established, the [IWC] may issue to a woman physically defective by age or otherwise, a special license authorizing the employment of such licensee . . . for a wage less than such *legal minimum wage . . . .*" (Stats. 1913, ch. 324, § 8, pp. 635-636, italics added.) Neither this provision nor section 1194's predecessor suggests that the Legislature intended anything broader by use of the modifier "legal." Moreover, contemporaneous scholarship similarly used "minimum wage" and "legal minimum wage" to refer to the same thing. (E.g., Holcombe, *The Effects of the Legal Minimum Wage for Women* (Jan. 1917) 69 Annals of Am. Academy Pol. & Soc. Sci. 34, 41 ["The experience with the *minimum wage . . .* seems to indicate that the good results anticipated by the original advocates of the *legal minimum wage* for women are being secured." (Italics added.)]; Webb, *The Economic Theory of a Legal Minimum Wage* (Dec. 1912) 20 J. of Pol. Econ. 973 [also using terms interchangeably]; Holcombe, *The Legal Minimum Wage in the United States* (Mar. 1912) 2 Am. Econ. Rev. 21 [same].)

Section 1194 was codified in 1937 as part of the act establishing the Labor Code. (Stats. 1937, ch. 90, § 1194, p. 217.) The 1937 act substituted the phrase "woman or minor" for the term "employee" in section 1194 but otherwise retained the language of section 1194's predecessor provision, including the two references to "minimum wage," one using the modifier "legal" and one without. In 1961, the Legislature amended the statute, expanding it to apply to the overtime claims of women and minors. (Stats. 1961, ch. 408, § 3, p. 1479.) While adding the term "overtime compensation," the Legislature did not use "legal" to modify the term. (*Ibid.*) Then, in 1972, in response to the federal Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the Legislature amended section 1194 to allow any employee, regardless of sex or age, to recover unpaid minimum wages and related costs of suit, although the statute continued to limit its overtime remedy to women

9

and minors. (Stats. 1972, ch. 1122, § 13, p. 2156.) The Legislature also inserted the word "legal" in front of the first reference to "overtime compensation" (*ibid.*), but nothing in the legislative history suggests that this was intended to broaden the scope of the term "overtime compensation." More plausibly, the addition of "legal" was simply intended to parallel section 1194's usage of "legal minimum wage," which has remained unchanged since 1913.

Finally, section 1194's scope must be construed in light of related statutes. Just as section 1194 permits an employee to sue to recover minimum wages and overtime compensation, a neighboring statute — section 1193.6 — permits the Department of Industrial Relations or the Division of Labor Standards Enforcement to sue to "recover unpaid minimum wages or unpaid overtime compensation." (§ 1193.6, subd. (a).) Sections 1193.6 and 1194 are directed at the same problem, the recovery of unpaid minimum wages and overtime compensation. Although the word "legal" does not appear in section 1193.6, nothing suggests that the two statutes mean anything different in referring to minimum wages or overtime compensation. Indeed, the identical scope of the two statutes is confirmed by section 1194.2, subdivision (a), which provides, "In any action under Section 98, 1193.6 or 1194 to recover wages because of the payment of a wage less than the minimum wage . . . , an employee shall be entitled to recover liquidated damages . . . ." Moreover, because the same 1961 bill that amended section 1194 to include overtime claims also added section 1193.6 (Stats. 1961, ch. 408, § 2, p. 1479), we presume that the Legislature was aware of section 1194's language when it adopted section 1193.6. (See *In re Michael G.* (1988) 44 Cal.3d 283, 293.) Yet no evidence suggests that the term "minimum wage" in section 1193.6 was intended to have a narrower scope than the term "legal minimum wage" in section 1194.

10

We conclude that section 1194 does not authorize an award of attorney's fees to employees who prevail on a section 226.7 action for the nonprovision of statutorily mandated rest periods. Neither the plain text, the history of section 1194, nor the language of related statutes provides any reason to depart from the ordinary meaning of section 1194's words. It is thus unsurprising that plaintiffs have been unable to identify a single case since the provision's adoption almost 100 years ago interpreting it to apply to anything other than claims for unpaid minimum wages or, starting in 1961, unpaid overtime compensation. Although plaintiffs may be correct that section 226.7 shares characteristics with minimum wage and overtime laws (see *Earley*, *supra*, 79 Cal.App.4th at pp. 1429-1431), it is up to the Legislature to decide whether section 1194's one-way fee-shifting provision should be broadened to include section 226.7 actions.

**B.**

Having concluded that section 1194 does not authorize the recovery of attorney's fees by employees who prevail on a section 226.7 claim, we next consider whether section 218.5 authorizes an award of attorney's fees to the prevailing party in litigation over such a claim.

Section 218.5 authorizes the award of fees to a party who prevails in an "action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions . . . ." IFP does not contend that plaintiffs' section 226.7 claim concerns the payment of fringe benefits or health and welfare or pension fund contributions. The question here is whether a section 226.7 claim, which concerns an employer's alleged failure to provide statutorily mandated meal and rest periods, constitutes an "action brought for the nonpayment of wages" within the meaning of section 218.5. We conclude it does not.

Section 226.7 is not aimed at protecting or providing employees' wages. Instead, the statute is primarily concerned with ensuring the health and welfare of

11

employees by requiring that employers provide meal and rest periods as mandated by the IWC. (See *Murphy*, *supra*, 40 Cal.4th at pp. 1105-1106, 1113; Sen. Rules Com., third reading analysis of Assem. Bill No. 2509 (1999-2000 Reg. Sess.) (Bill No. 2509) as amended Aug. 25, 2000, p. 2 [provision was in response to employers who "work their employees long hours without rest breaks"].) When an employee sues for a violation of section 226.7, he or she is suing because an employer has allegedly "require[d] [the] employee to work during [a] meal or rest period mandated by an applicable order of the Industrial Welfare Commission." (§ 226.7, subd. (a).) In other words, a section 226.7 action is brought for the *nonprovision of meal and rest periods*, not for the "nonpayment of wages."

Sections 201 and 202 provide a useful contrast to section 226.7. Section 201 provides that when "an employer discharges an employee, the wages earned and unpaid at the time of the discharge are due and payable immediately" (§ 201, subd. (a)), and section 202 provides that when an "employee has given 72 hours previous notice of his or her intention to quit, . . . the employee is entitled to his or her wages at the time of quitting" (§ 202, subd. (a)). When an employee sues on the ground that his or her former employer has violated one of these provisions, the suit is an "action brought for the nonpayment of wages." In other words, the employer's nonpayment of wages is the basis for the lawsuit. By contrast, when an employee sues on the ground that his or her employer has violated section 226.7, the basis for the lawsuit is the employer's nonprovision of statutorily required rest breaks or meal breaks.

It is true that the remedy for a violation of the statutory obligation to provide IWC-mandated meal and rest periods is "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." (§ 226.7, subd. (b).) It is also true that we held in *Murphy* that this remedy is a "wage" for purposes of determining what statute of

12

limitations applies to section 226.7 claims. (*Murphy*, *supra*, 40 Cal.4th at p. 1099.) IFP contends that because the remedy sought by plaintiffs is a wage, the present action is an "action brought for nonpayment of wages" within the meaning of section 218.5. We disagree.

As a textual matter, we note that section 218.5 uses the phrase "action brought for" to mean something different from what the phrase means when it is coupled with a particular remedy (e.g., "action brought for damages" or "action brought for injunctive relief"). An "action brought for damages" is an action brought *to obtain* damages. But an "action brought for nonpayment of wages" is not (absurdly) an action *to obtain* nonpayment of wages. Instead, it is an action brought *on account of* nonpayment of wages. The words "nonpayment of wages" in section 218.5 refer to an alleged legal violation, not a desired remedy.

Nonpayment of wages is not the gravamen of a section 226.7 violation. Instead, subdivision (a) of section 226.7 defines a legal violation solely by reference to an employer's obligation to provide meal and rest breaks. (See § 226.7, subd. (a) ["No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commision."].) The "additional hour of pay" provided for in subdivision (b) is the legal remedy for a violation of subdivision (a), but whether or not it has been paid is irrelevant to whether section 226.7 was violated. In other words, section 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay. An employer's failure to provide an additional hour of pay does not form part of a section 226.7 violation, and an employer's provision of an additional hour of pay does not excuse a section 226.7 violation. The failure to provide required meal and rest breaks is what triggers a violation of section 226.7. Accordingly, a section 226.7 claim is not an action

13

brought for nonpayment of wages; it is an action brought for non-provision of meal or rest breaks.

It is no answer to say that a section 226.7 claim is properly characterized as an action brought for (i.e., on account of) nonpayment of wages because if a defendant employer had provided the additional hour of pay remedy, presumably the plaintiff would not have brought the action at all. Such a characterization is a departure from the way we conventionally distinguish between the legal basis for a lawsuit and the remedy sought. Consider a typical lawsuit that alleges unlawful injury and seeks compensatory damages. We may say that the suit is an action brought for violation of some legal duty. But we do not say that the suit is an action brought for nonpayment of damages — even though the action would not have been brought had the defendant paid the damages for the plaintiff's injury.

Our reading of section 218.5 is not at odds with our decision in *Murphy*. There, we held that the three-year statute of limitations period in Code of Civil Procedure section 338, subdivision (a) governs section 226.7 claims because such claims are "action[s] upon a liability created by statute, other than a penalty or forfeiture" (Code Civ. Pro. § 338, subd. (a)). (See *Murphy*, *supra*, 40 Cal.4th at p. 1099.) We said that the "additional hour of pay" remedy in section 226.7 is a " 'liability created by statute' " and that the liability is properly characterized as a wage, not a penalty. (*Murphy*, at pp. 1102, 1114.) To say that a section 226.7 remedy is a wage, however, is not to say that the *legal violation* triggering the remedy is nonpayment of wages. As explained above, the legal violation is nonprovision of meal or rest breaks, and the object that follows the phrase "action brought for" in section 218.5 is the alleged legal violation, not the desired remedy.

We find additional support for our conclusion in the legislative history of section 218.5 and section 226.7. When section 218.5 was enacted in 1986, the Senate Judiciary Committee's report stated that "actions for nonpayment of wages

14

usually involve relatively small amounts of money, since such suits arise from a situation in which the employee is terminated or quits because of lack of payment." (Sen. Com. on Judiciary, Rep. on Sen. Bill No. 2570 (1985-1986 Reg. Sess.) (Bill No. 2570) as introduced Feb. 21, 1986, pp. 2-3.) Another bill report said section 218.5 "would require courts to award attorney fees to a prevailing party in any action involving employment benefits (salary, pension fund, health benefits, etc.) . . . ." (Sen. Rules Com., Rep. on Bill No. 2570, as amended May 14, 1986, p. 1.) These statements suggest, consistent with our interpretation, that the Legislature intended "action[s] brought for the nonpayment of wages" to refer to suits where the allegedly unlawful conduct is the employer's failure to comply with an obligation to pay wages or benefits. Section 226.7, by contrast, involves an employer's obligation to provide meal or rest breaks.

The legislative history of section 226.7, enacted in 2000, also suggests that the Legislature did not intend meal or rest break claims to be subject to section 218.5's two-way fee-shifting provision. During the 1999-2000 legislative session, the Legislature considered at least four bills that included versions of section 226.7. Assembly Bill No. 633's version of section 226.7 provided for one-way fee-shifting in favor of prevailing employees. (Assem. Bill No. 633 (1999-2000 Reg. Sess.) (Bill No. 633) as introduced Feb. 19, 2000, pp. 13-14.) Section 226.7 was later removed entirely from the bill (Bill No. 633, as amended Sept. 3, 1999, pp. 17-18), and on the same day, an identical version of section 226.7 was added to different legislation (Assem. Bill. No. 1652 (1999-2000 Reg. Sess.) (Bill No. 1652) as amended Sept. 3, 1999, p. 9). Section 226.7's one-way fee-shifting provision was later removed from Bill No. 1652, apparently in an effort to delete one "of the more controversial wage and hour provisions" (Assem. Com. on Labor & Employment, Analysis of Bill No. 1652, as amended Sept. 8, 1999, p. 2), but

15

the rest of section 226.7 was retained.  (Bill No. 1652, as amended Sept. 8, 1999, p. 9.)  The Legislature passed Bill No. 1652, but it was vetoed by the Governor.

The following year, Bill No. 2509 was introduced, including a version of section 226.7 together with a one-way fee-shifting provision.  (Bill No. 2509, as introduced Feb. 24, 2000, pp. 20-21.)  Although the Senate amended the bill on June 26, 2000, July 6, 2000, and August 7, 2000, it retained section 226.7's one-way fee-shifting provision.  Only when Bill No. 2509 was amended for the final time was section 226.7 changed to its current form, without the one-way fee-shifting language.  (Bill No. 2509, as amended August 25, 2000, pp. 19-23.)  The Governor approved the bill on September 28, 2000.

Thus, the Legislature extensively considered including a one-way fee-shifting provision in favor of prevailing employees in section 226.7, but ultimately decided against it.  In so doing, the Legislature gave no indication that it intended section 226.7 claims to be subject to section 218.5's two-way fee-shifting provision.  The absence of any such indication is significant because the Legislature clearly had section 218.5 within its sights when it enacted section 226.7 in 2000.  Bill No. 2509 — the bill that created section 226.7 — also amended section 218.5 to make clear that its two-way fee-shifting provision does not apply to claims covered by section 1194.  (Bill No. 2509, as introduced Feb. 24, 2000, pp. 17-18.)  Further, after the Court of Appeal in *Earley* issued its April 20, 2000 opinion holding that section 218.5 does not apply (and never had applied) to claims for unpaid minimum wages and overtime compensation (*Earley*, *supra*, 79 Cal.App.4th at pp. 1427-1430), the Legislature amended Bill No. 2509 to explicitly approve *Earley*'s holding.  (Bill No. 2509, as amended Aug. 25, 2000, p. 28.)  Yet even as it amended section 218.5 in these ways *in the same legislation* that created section 226.7, the Legislature made no mention of section 218.5's applicability to section 226.7 claims.

16

In sum, the legislative history shows that the Legislature (a) considered including a one-way fee-shifting provision in favor of employees in section 226.7, (b) ultimately deleted the provision from the final version of section 226.7, and then (c) gave no indication that section 218.5's two-way fee-shifting rule should apply to section 226.7 claims, even as (d) it adopted amendments to section 218.5 as part of the very same legislation that created section 226.7. We believe the most plausible inference to be drawn from this history is that the Legislature intended section 226.7 claims to be governed by the default American rule that each side must cover its own attorney's fees.

IFP contends that the public policies of discouraging unmeritorious lawsuits and encouraging employees to file administrative complaints instead of civil suits support the applicability of section 218.5's two-way fee-shifting rule to section 226.7 claims. But IFP cites no evidence that the Legislature intended those policies to apply specifically to section 226.7 claims so as to bring such claims within the coverage of section 218.5. As we noted in *Murphy*, "[m]eal and rest periods have long been viewed as part of the remedial worker protection framework," and low-wage workers are the "likeliest to suffer violations of section 226.7." (*Murphy*, *supra*, 40 Cal.4th at pp. 1105, 1113-1114.) In giving no indication that section 218.5 applies to meal or rest break claims when it enacted section 226.7, the Legislature could reasonably have concluded that meritorious section 226.7 claims may be deterred if workers, especially low-wage workers, had to weigh the value of an "additional hour of pay" remedy if their claims succeed against the risk of liability for a significant fee award if their claims fail.

In light of the statutory text and the legislative history of section 218.5 and section 226.7, we conclude that section 218.5's two-way fee-shifting provision does not apply to section 226.7 claims alleging the failure to provide statutorily mandated meal and rest periods.

17

Having concluded that section 226.7 claims do not constitute "action[s] brought for the nonpayment of wages" within the meaning of section 218.5, we do not address plaintiffs' argument that, when a suit includes claims covered by section 1194, the entire suit is shielded from attorney's fees under section 218.5.

## CONCLUSION

The judgment of the Court of Appeal is affirmed as to plaintiffs' first and seventh claims and reversed as to plaintiffs' sixth claim.


LIU, J.


WE CONCUR:  CANTIL-SAKAUYE, C. J.
            KENNARD, J.
            BAXTER, J.
            WERDEGAR, J.
            CHIN, J.
            CORRIGAN, J.

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Kirby v. Immoos Fire Protection, Inc.

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 186 Cal.App.4th 1361
**Rehearing Granted**

_____

**Opinion No.** S185827
**Date Filed:** April 30, 2012

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Loren E. McMaster

_____

**Counsel:**

Law Offices of Ellyn Moscowitz, Ellyn Moscowitz, Jennifer Lai, Enrique Gallardo; Law Offices of Scot D. Bernstein and Scot Bernstein for Plaintiffs and Appellants.

Pollard | Bailey and Matt C. Bailey for Consumer Attorneys of California as Amicus Curiae on behalf of Plaintiffs and Appellants.

Bryan Schwartz Law and Bryan Schwartz for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Cynthia L. Rice, Shannon Going and Christina Medina for California Rural Legal Assistance Foundation, Worksafe, Inc., State Building and Construction Trades Council of California , AFL-CIO, California Labor Federation, AFL-CIO, Legal Aid Society-Employment Law Center and Hastings Civil Justice Clinic as Amici Curiae on behalf of Plaintiffs and Appellants.

Rediger, McHugh & Hubbert, Rediger, McHugh & Ownsby, Robert L. Rediger, Laura C. McHugh and Jimmie E. Johnson for Defendant and Respondent.

Paul, Hastings, Janofsky & Walker, George W. Abele and Jessica Pae Boskovich for California Employment Law Council as Amicus Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Ellyn Moscowitz
Law Offices of Ellyn Moscowitz
1629 Telegraph Avenue, Fourth Floor
Oakland, CA  94612
(510) 899-6240

Robert L. Rediger
Rediger, McHugh & Ownsby
555 Capitol Mall, Suite 1240
Sacramento, CA  95814
(916) 442-0033

George W. Abele
Paul, Hastings, Janofsky & Walker
515 South Flower Street, Twenty-Fifth Floor
Los Angeles, CA  90071-2228
(213) 683-6000