**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 31 2021

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| MELISSA MAGANA, | No. 20-55027 |
| Plaintiff-Appellant, | D.C. No. 8:18-cv-02249-DOC-ADS |
| v. | |
| ZARA USA, INC. | MEMORANDUM[*] |
| Defendant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted February 2, 2021
Pasadena, California

Before: GOULD, LEE, and VANDYKE, Circuit Judges.

Memorandum joined by Judge GOULD and Judge LEE;
Dissent by Judge VANDYKE

Melissa Magana appeals the dismissal of her employment class action suit

against Zara. The district court held that Magana's lawsuit — which sought Private

Attorney General Act (PAGA) penalties based on a suitable seating violation under

the California Labor Code — was barred by claim preclusion because Magana was

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

an unnamed class member in an earlier wage-and-hour settlement with Zara. We have jurisdiction under 28 U.S.C. § 1291, and we review de novo the district court's dismissal on claim preclusion grounds. We reverse and remand.

1. As an initial matter, we agree with the district court's conclusion that the class-wide settlement agreement in the earlier wage-and-hour action (called the "Paz" lawsuit) does not contractually bar Magana's current claim. On appeal, Magana asks us to take this conclusion one step further and hold that the settlement agreement affirmatively allows her suitable seating claim to proceed on purely contractual grounds. Magana correctly notes that parties are allowed to contract around the preclusive effect of a settlement agreement. Specifically, if "a settlement agreement expressly excludes certain claims, the resulting dismissal does not preclude further litigation on the excluded claim." *Kim v. Reins Int'l Cal., Inc.*, 459 P.3d 1123, 1134 (Cal. 2020) (citation omitted). Here, though, the settlement agreement does not expressly exclude the seating claim. So, we reject Magana's argument that the settlement agreement contractually allows her seating claim to go forward.

On the other hand, we also reject Zara's argument that the settlement agreement precludes Magana's seating claim on purely contractual grounds. Zara, for its part, points to the settlement agreement's definition of "PAGA Settlement Amount" as constituting "full satisfaction of all claims for PAGA civil penalties

2

under the California Labor Code, Wage Orders, regulations, and/or other provisions of law alleged to have been violated with respect to the Settlement Class." It is true that both the earlier action and the current action sought PAGA penalties on the basis of various Labor Code violations. In light of that, the phrase "all claims for PAGA civil penalties" could ostensibly be read to literally encompass all claims for PAGA penalties, including Magana's seating claim.

We hold, however, that this broad definitional language must be read in the context of the more specific limiting language in the settlement agreement's release provision itself. *See Wilder v. Wilder*, 291 P.2d 79, 83 (Cal. Ct. App. 1955) ("The general rule is that if a general and specific provision are inconsistent, the specific provision will control."). Specifically, the settlement agreement contains a "Release of Claims by Participating Class Members." That paragraph makes clear that the settlement release applies only to "claims for relief based on the facts alleged in [the complaint]." [1] What is more, the release provision goes on to specifically refer to

---

[1] The dissent reads this limiting language as descriptive or prefatory language, but the text does not have the typical hallmark of prefatory language. *See* Black's Law Dictionary 1385 (9th ed. 2009) (defining the term "recital," or "whereas clause," to mean "[a] preliminary statement in a contract ... explaining the reasons for entering into it or the background of the transaction, or showing the existence of particular facts"); *Sabetian v. Exxon Mobil Corp.*, 272 Cal. Rptr. 3d 144, 155 (Ct. App. 2020), as modified (Nov. 25, 2020) ("The law has long distinguished between a 'covenant' which creates legal rights and obligations, and a 'mere recital' which a party inserts for his or her own reasons into a contractual instrument. Recitals are given limited effect even as between the parties." (citations omitted)). Here, the sentence containing this limiting language ("Upon the Effective Date, for and in

3

claims for "damages, penalties, interest and other amounts recoverable under … the PAGA as to the facts alleged in the [complaint]." We therefore read the settlement agreement to plainly limit the release of PAGA claims to only those claims based on the facts alleged in the complaint. Here, the wage-and-hour complaint asserts claims for unpaid overtime, unpaid minimum wages, noncompliant wage statements, the nonprovision of meal and rest breaks, and the untimely payment of wages in violation of the California Labor Code, plus a derivative claim for PAGA penalties. The complaint does not allege any facts related to seating. The settlement agreement's release provision thus does not encompass the suitable seating claim.

2. We disagree with the district court's conclusion that res judicata bars Magana's suitable seating claim. Under California law, claim preclusion applies if a second suit involves "(1) the same cause of action (2) between the same parties (3)

consideration of the mutual promises . . .") clearly sets out an enforceable promise, not a mere factual recitation. *See Golden W. Baseball Co. v. City of Anaheim*, 31 Cal. Rptr. 2d 378, 396 (Ct. App. 1994) (explaining that clause starting with the words "It is understood and agreed" was "not a recital, despite its label. It is not a mere recitation of facts, but contains the operative language.").

We also do not believe that the ninth category listed in Paragraph 37 (which refers to "damages, penalties, interest, and other amounts recoverable") makes category seven ("violation of PAGA") redundant merely because the former also refers to PAGA. The ninth category also lists the FLSA, California Labor Code, Unfair Competition Law, and Wage Orders, all of which are listed in categories one to six in Paragraph 37. We construe the ninth category's comprehensive language as a catch-all provision to reinforce that Zara would not be liable for any damages, penalties, interest, or any other amounts for claims based on the facts alleged in the complaint.

4

after a final judgment on the merits in the first suit." *Kim*, 459 P.3d at 1134 (citation omitted). The only disputed element in this case is whether the Magana lawsuit involves the same cause of action as the earlier Paz lawsuit.[2] "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have consistently applied the 'primary rights' theory." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010) (internal quotations and citation omitted). The "determinative factor" in the primary rights analysis is the "harm suffered." *Id*. "[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Eichman v. Fotomat Corp.*, 197 Cal. Rptr. 612, 614 (Ct. App. 1983).

With that framework in mind, the relevant question is whether the claims at issue in the earlier lawsuit — unpaid overtime, unpaid minimum wages, noncompliant wage statements, untimely payment of wages, and the nonprovision of meal-and-rest breaks — implicate the same primary right as Magana's seating claim (California requires employers to provide seating if the job reasonably permits

---

[2] Magana argues for the first time in her reply brief that she never in fact received notice of the Paz settlement or compensation, so that argument is waived. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief.").

it). We hold that the answer is no. All of the earlier claims were meant to redress the nonpayment of wages or were otherwise related to wages, while the suitable seating claim is entirely unrelated to wages. So, different primary rights are at issue.

We recognize that the resolution of the primary-rights question ultimately boils down to a question of framing: does the suitable seating claim narrowly implicate the right to seating, or does it implicate a broader right to a minimum guaranteed standard of labor? If we conceptualize the relevant primary rights too narrowly, we risk opening the door to endless successive Labor Code lawsuits against the same employer, which would undermine the goals of the claim preclusion doctrine. But if we conceptualize the relevant primary rights too broadly, we risk barring claims that really have nothing to do with prior actions and deserve to be litigated on their own. Based on existing caselaw, we think the right answer in this instance lies somewhere in the middle.

Specifically, we think it makes sense to at least draw a distinction between wage-related claims and non-wage claims for purposes of the primary rights analysis. In a similar case involving the application of claim preclusion to Labor Code claims, the California Court of Appeal considered whether an earlier action for failure to pay overtime and split-shift wages barred a later action for PAGA penalties premised on violations related to overtime, noncompliant wage statements, failure to provide meal and rest periods, indemnification for business expenses, and the

6

untimely payment of wages. *Villacres v. ABM Indus. Inc*., 117 Cal. Rptr. 3d 398 (Ct. App. 2010). In concluding that claim preclusion applied, the court described all of the claims at issue as "related to … the payment of wages and penalties." *Id*. at 416.

At the same time, *Villacres* declined to adopt either "a categorical rule that employees must assert all known Labor Code violations and PAGA penalties in a single suit, at least where the violations are related to wages," or the opposite rule that "each Labor Code violation and each corresponding PAGA penalty constitute a separate primary right." *Villacres*, 117 Cal. Rptr. 3d at 413. Thus, we read *Villacres* to say that at least a subset of wage-related claims under the Labor Code — including overtime, noncompliant wage statements, untimely payment of wages, and meal-and-rest period claims — involve the same primary right.

Turning to the claims in this case, we do not need to go so far as to definitively pinpoint the primary right at issue in Magana's suitable seating claim. (Is it the right to seating or is it a broader right related to health and safety in the workplace?) But under *Villacres*, it is at least safe to say that Magana's suitable seating claim does *not* relate to the payment of wages. In contrast, the earlier claims for unpaid overtime, unpaid minimum wages, untimely payment of wages, and noncompliant wage statements do relate to the payment of wages. To be fair, identifying the

7

primary right at issue in the meal-and-rest break claims is a closer call,[3] but ultimately, we think those claims should also be treated as wage-related claims for purposes of the primary-rights analysis.

For one, that appears to be how the *Villacres* court itself treated the claims. *See Villacres*, 117 Cal. Rptr. 3d at 416. And elsewhere, the California Supreme Court has confirmed that the remedy for a meal-and-rest break violation can be characterized as the payment of wages. *See Murphy v. Kenneth Cole Prods., Inc.*, 155 P.3d 284, 297 (Cal. 2007) (characterizing "additional hour of pay" remedy for meal-and-rest violations as "a premium wage intended to compensate employees"). *But see Naranjo v. Spectrum Sec. Servs., Inc.*, 253 Cal. Rptr. 3d 248, 270 (Ct. App. 2019) (holding that meal-and-rest premiums are not wages for purposes of wage-related derivative claims under the Labor Code), *cert. granted*, 455 P.3d 704 (Cal. 2020).

---

[3] In *Kirby*, the California Supreme Court in a case involving a fee-shifting statute noted that meal-and-rest claims are not actions for the nonpayment of wages, but that rather "the legal violation is nonprovision of meal or rest breaks." *Kirby v. Immoos Fire Prot., Inc.*, 274 P.3d 1160, 1168 (Cal. 2012). The court also explained that the meal-and-rest provisions are "primarily concerned with ensuring the health and welfare of employees by requiring that employers provide meal and rest periods." *Id*. at 1167. On the surface, then, there seems to be some tension between *Kirby* and *Villacres*. Ultimately, though, we do not think that *Kirby* is applicable here because it did not address primary-rights analysis. Rather, that case ultimately turned on a statutory interpretation question of whether meal-and-rest claims counted as an "action brought for the nonpayment of wages" as that phrase appeared in a fee-shifting statute. *Kirby*, 274 P.3d at 1168. That is not necessarily the same inquiry as identifying the "harm suffered" for primary-rights purposes.

In sum, the harm at the center of all of the earlier claims involves the nonpayment of wages for the time value of labor.  In contrast, the harm of a suitable seating violation is much more abstract and cannot be redressed via the payment of wages.  Thus, we hold that Magana's seating claim does not implicate the same primary right as any of the wage-related claims resolved in the earlier class-wide settlement, so we reverse the dismissal on claim preclusion grounds.

**REVERSED AND REMANDED.**

*Magana v. Zara USA*, No. 20-55027

VANDYKE, Circuit Judge, dissenting.

The majority reverses the district court, concluding that (1) the *Paz* settlement "does not contractually bar Magana's … claim," and (2) her claim is not barred by California res judicata law. While this is far from an obvious case, I disagree with both conclusions, and therefore respectfully dissent. Because holding in Zara's favor on either ground would be sufficient to affirm the district court, I address only the contractual ground.

Paragraph 24 of the *Paz* settlement agreement broadly settled "all claims for PAGA civil penalties" on behalf of the class members (which includes Magana). As the majority acknowledges, that paragraph's facially expansive language "could ostensibly be read to literally encompass all claims for PAGA penalties, including Magana's seating claim." I would go farther and say that should be the presumptive reading: "*all claims* for PAGA civil penalties" is pretty clear. But the majority opts instead to read it more narrowly by construing the agreement's Paragraph 37 as limiting Paragraph 24's release provision.

Paragraph 37 states that "the Participating Class Members do hereby fully, finally and forever release and discharge [Zara] from all the following claims for relief based on the facts alleged in the Action:"—followed by nine enumerated descriptions of specific claims released by the class. Pointing to this prefatory

1

language, the majority explains that Paragraph 37 "makes clear that the settlement release applies only to 'claims for relief based on the facts alleged in [the complaint]'" (alterations in original).

But, first, the mere fact that a release of claims is "based on" certain facts does not necessarily strictly limit the released claims to only those claims with identical facts. "Based on" could, as the majority appears to read it, mean something like "depend on,"[1] which, if true, would support the majority's narrow reading. But it could also mean something like "founded on,"[2] which would only descriptively denote that the following list of released claims was predicated on the facts from the class members' complaint, but not strictly "limited to" those facts.[3] Put simply, I don't think the "based on the facts alleged" phrase from Paragraph 37 "makes clear" that Paragraph 24's expansive "full release of all claims for PAGA civil penalties" language must be read narrowly. Paragraph 24's language is both broad and clear. Paragraph 37's "based on the facts alleged" language is ambiguous. I would not use an ambiguous phrase to limit a clear one.

---

[1] *See Based On*, THESAURUS.COM, https://www.thesaurus.com/browse/based%20on (last visited Mar. 24, 2021).
[2] *Id.*
[3] *See Base*, BLACK'S LAW DICTIONARY 185 (11th Ed. 2019) (defining the verb "base," *inter alia*, as to "serve as a foundation for" or "[t]o use (something) as the thing from which something else is developed").

2

Second, Paragraph 37's prefatory phrase doesn't purport to define the claims released in any event. It refers to "all the *following* claims" released (emphasis added), which, as one might expect, are described and defined in the enumerated sections that "follow[]." And it is here, I believe, that the majority's otherwise reasonable (but not the only reasonable) interpretation especially breaks down.

Some of the nine categories of released claims enumerated by the parties are specifically limited "*as to* the facts alleged in the Action" (emphasis added).[4] But others are not. The seventh category of enumerated claims released by the *Paz* class members, for example, is simply any "violation of PAGA"—full stop. Notably, this facially broad category of claims does not include any language limiting the released "violation of PAGA" claims to only "the facts alleged in the Action." The ninth (and final) enumerated category of released claims *does*, in contrast, release "all damages, penalties, interest and other amounts recoverable under … the PAGA *as*

---

[4] Note that here the parties used "*as to* the facts alleged in the Action" to qualify some of the released claims, rather than "*based on* the facts alleged in the Action" (emphases added). "As to" more clearly conveys an attempt to limit than "based on." That, and the fact that the parties used different language so closely together, suggests that the parties meant "based on the facts" to mean something different from "as to the facts." *See Alameda Cnty. Flood Control & Water Conservation Dist. v. Dep't of Water Res.*, 152 Cal. Rptr. 3d 845, 862 (Cal. Ct. App. 2013) (applying the following statutory interpretation rule in interpreting a contract: "[w]here the same word or phrase might have been used in the same connection in different portions of a statute but a different word or phrase having different meaning is used instead, the construction employing that different meaning is to be favored" (citation omitted)).

3

*to the facts alleged in the Action*" (emphasis added). This latter provision in the ninth category is the language from Paragraph 37 relied on by the majority for its narrow reading of the otherwise broad release language in Paragraph 24.

But as just described, in addition to the Paragraph 37 language relied on by the majority, that paragraph has other language broadly releasing all claims for any "violation of PAGA" *without* specifically limiting that category to "the facts alleged in the action." Under the majority's reading of Paragraph 37, the seventh enumerated category of claims is doubly superfluous. First, the majority reads superfluity into the contract because the majority (incorrectly, in my view) reads the prefatory language at the beginning of Paragraph 37—"based on the facts alleged in the Action"—as necessarily limiting each of the nine enumerated categories of released claims that follow. This reading might be plausible in other contexts. But because the phrase "as to the facts alleged in the Action" also appears four times in some—but not all—of the descriptions of the enumerated claims themselves, the majority's reading necessarily renders all those later uses of the phrase redundant and superfluous. *See Ins. Co. of State of Pa. v. Associated Int'l Ins. Co.*, 922 F.2d 516, 522 (9th Cir. 1990) (noting that, under California law, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" (citation omitted)); *Shine v. Williams-Sonoma, Inc.*, 233 Cal. Rptr. 3d 676, 684 (Cal. Ct. App. 2018) ("[T]he language of

4

a settlement agreement must be viewed in its entirety, and, if possible, every provision must be given effect."); *Brandwein v. Butler*, 161 Cal. Rptr. 3d 728, 747 (Cal. Ct. App. 2013) ("[W]hen interpreting a contract, we strive to interpret the parties' agreement to give effect to all of a contract's terms, and to avoid interpretations that render any portion superfluous, void or inexplicable.").

I think the better construction of Paragraph 37 is to read the prefatory release language—"all the following claims for relief based on the facts alleged in the Action"—not as *limiting* language, but simply as *introductory* or *descriptive* language acknowledging that the facts of the *Paz* suit are the basis for the *Paz* Class Members releasing the nine categories of claims that follow. That gives Paragraph 37's later uses (and, as importantly, non-uses) of the phrase "as to the facts alleged in the Action" independent meaning and purpose.

This construction also avoids a second redundancy. Under the majority's reading of Paragraph 37, claim category seven—which releases claims for any "violation of PAGA"—is entirely superfluous. That is because claim category nine *specifically* releases claims for "all damages, penalties, interests, and other amounts recoverable under … the PAGA *as to the facts alleged in the Action*" (emphasis added). Under my reading of Paragraph 37, category seven has meaning (it releases class member's PAGA claims more broadly than just those directly related "to the

5

facts alleged in the Action"). Under the majority's construction, category seven is entirely subsumed within category nine and thus unnecessary.[5]

For the above reasons, I conclude that Magana, as part of the class covered by the *Paz* settlement agreement, has already released the claims she is attempting to assert in this action. I would accordingly affirm, without needing to reach the difficult question of whether her claims are precluded under California res judicata law.

---

[5] The majority argues that there is no redundancy because, under its reading, the ninth enumerated category is a catch-all provision. I agree that "catch-all provision" is a good label for it. But that doesn't fix the problem that, under the majority's construction, the parties expressly and uniquely limited the contract's catch-all release provision "as to the facts alleged in the Action" when, per the majority, *all* the enumerated categories—including the catch-all provision—were *already* so limited. Under the majority's construction, there is simply no way to escape a glaring superfluity problem. Nor does it address the problem that, once you interpret category seven's "violation of PAGA" language as only covering any "violation of PAGA" rooted in "the facts alleged in the Action," there is no "violation of PAGA" that category seven would cover that isn't already covered by category nine.