Filed 8/25/22; Certified for Publication 9/12/22 (order attached)
Opinion following transfer from Supreme Court

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAQUEL BETANCOURT, | B293625 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC629916) |
| v. | |
| OS RESTAURANT SERVICES, LLC et al., | |
| Defendants and Appellants. | |

     APPEAL from a judgment of the Superior Court of Los Angeles County.  Deirdre H. Hill, Judge.  Affirmed.

     Raines Feldman, Lauren J. Katunich, Robert M. Shore and Leticia M. Kimble for Defendants and Appellants.

     Felahy Employment Lawyers, Allen Felahy; Yash Law Group and Yashdeep Singh for Plaintiff and Respondent.

_____

**SUMMARY**

This case is before us on remand from the Supreme Court.

The Labor Code mandates an award of reasonable attorney fees to the prevailing party in any action brought for the nonpayment of wages, if any party requests attorney fees at the initiation of the action.  (Lab. Code, § 218.5, subd. (a).)  (Further statutory references are to the Labor Code unless otherwise specified.)  Here, the trial court awarded plaintiff $280,000 in attorney fees under section 218.5, and the employer appealed the award.

The only wage and hour claims alleged and litigated by the parties were for rest break and meal period violations (§ 226.7), and claims for penalties (waiting time penalties under section 203 and wage statement violations under section 226) based on the rest break and meal period violations.  In our original opinion, we held, following *Kirby v. Immoos Fire Protection, Inc.* (2012) 53 Cal.4th 1244, 1255 (*Kirby*), that an action brought for failure to provide rest breaks or meal periods (§ 226.7) is not "an 'action brought for the nonpayment of wages' " within the meaning of section 218.5.  (*Kirby,* at p. 1255.)  We also held that a plaintiff could not recover penalties for waiting time and wage statement violations based on claims of rest break and meal break violations, and so could not recover attorney fees based on those penalties.

In *Naranjo v. Spectrum Security Services, Inc.* (2022) 13 Cal.5th 93 (*Naranjo*), the Supreme Court held otherwise.  The court concluded that "extra pay for missed breaks constitutes 'wages' that must be reported on statutorily required wage statements during employment (Lab. Code, § 226) and paid within statutory deadlines when an employee leaves the job (*id.*,

§ 203).” (*Naranjo,* at p. 102; *ibid.* [the extra pay is “designed to compensate for the unlawful deprivation of a guaranteed break,” but “also compensates for the work the employee performed during the break period”].)  After issuance of its opinion, the Supreme Court transferred this case to us with directions to reconsider our opinion in light of *Naranjo.*

Having done so, we affirm the award of attorney fees.

## FACTS

Defendants are OS Restaurant Services, LLC and Bloomin’ Brands, Inc.  They are the owners or operators of a Fleming’s Steakhouse & Wine Bar on Olympic Boulevard in Los Angeles.  Plaintiff Raquel Betancourt worked there as a server from 2008 through 2015.

**1.  The Complaint**

In August 2016, plaintiff sued defendants.  The complaint alleged defendants regularly failed to give plaintiff her full uninterrupted rest periods, and that defendants wrongfully terminated plaintiff in retaliation for her making internal complaints that defendants violated wage and hour laws and food safety laws.

Plaintiff alleged she saw a chef using a vegetable cutting board to prepare raw chicken, and reported the incident to her manager, but defendants ignored her report.  Three months later, plaintiff informed Tiffany Yeargin, defendants’ senior human resource business partner, that one of the chefs routinely used vegetable cutting boards to prepare raw chicken, and that employees were regularly denied their 10-minute rest periods.

Immediately following plaintiff’s complaints to Ms. Yeargin, defendants’ managerial employees began to retaliate by “highly scrutinizing Plaintiff’s performance” and

3

singling her out for discipline for spurious reasons. Defendants continued to prevent her from taking her 10-minute rest periods. Ms. Yeargin ignored plaintiff's complaints about the retaliatory actions.

The complaint alleged that in December 2015, defendants issued plaintiff a formal written reprimand "based upon false and fabricated accusations of insubordination, which resulted in Plaintiff's suspension." After that, plaintiff again informed Ms. Yeargin of the retaliation and requested the reprimand be removed from her employment record, but her request was denied.

"[I]n further retaliation against Plaintiff for her whistleblowing activities," defendants terminated plaintiff's employment. "To date, Defendants have refused to pay Plaintiff all wages earned and unpaid at the time of her termination; including, without limitation, unpaid rest period premiums."

Plaintiff alleged causes of action for retaliation and wrongful termination because of her reports of rest break and food safety violations. She also alleged she was entitled to recover unpaid premium wages under section 226.7 for the rest break violations; penalties, costs and attorney fees under section 226 for failing to include rest break premiums on her itemized wage statements; and waiting time penalties under sections 201 through 203 for failure to pay all wages on termination, "including, without limitation, unpaid premium wages in lieu of rest periods."

The prayer for relief requested attorney fees under sections 218.5 and 226, Code of Civil Procedure section 1021.5, "and any other applicable provisions of law."[1]

## 2. The Litigation

Defendants answered the complaint in October 2016.

Discovery ensued. Two days after the trial court issued a tentative ruling on October 11, 2017, compelling plaintiff to comply with discovery requests and awarding sanctions against her, and one day after plaintiff produced more than 1,000 previously withheld documents, the parties settled the case. About a month before the settlement, the parties had stipulated the complaint could be amended to add a cause of action for meal period violations.

## 3. The Settlement

The parties put the terms of their settlement agreement on the record in open court on October 13, 2017. Defendants agreed to waive plaintiff's payment of sanctions and to pay plaintiff $15,375 in full settlement of her claims for failure to provide meal and rest periods under section 226.7, failure to provide accurate itemized wage statements under section 226, failure to pay all wages upon termination under sections 201 through 203, and

---

[1] Section 218.5 states in part: "In any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action. However, if the prevailing party in the court action is not an employee, attorney's fees and costs shall be awarded pursuant to this section only if the court finds that the employee brought the court action in bad faith." (*Id.*, subd. (a).)

5

"any and all wage-and-hour-related causes of action that were or could have been asserted in the complaint." Plaintiff agreed to dismiss with prejudice and without any payment her claims for retaliation and wrongful termination. The parties agreed plaintiff could later file a motion for attorney fees incurred only on her wage and hour claims, "consistent with applicable law."

### 4. Plaintiff's Motion for Attorney Fees

Plaintiff then sought $580,794 in attorney fees (and costs of more than $16,000), under sections 218.5 and 226. This consisted of a lodestar amount of $387,196 and a multiplier of 1.5. No time records were provided to the court, but plaintiff's counsel said 869.6 hours were incurred by his firm at various hourly rates. Plaintiff contended her wage and hour claims were "closely intertwined" with her retaliation and wrongful termination claims, so she was entitled to recover all of her fees and costs.

Defendants opposed the motion, contending that, among other reasons, *Kirby* and its progeny dictate that a party cannot, as a matter of law, recover attorney fees when she prevails only on a claim for meal or rest break premium pay. Defendants also contended plaintiff's claims of retaliation and wrongful termination were the crux of her case, and virtually all discovery was focused on those claims. Defendants gave multiple examples of discovery disputes requiring them to seek court intervention, none of which was relevant to meal and rest break claims, and many of which were directed at plaintiff's claims for economic damage flowing from her retaliation and wrongful termination claims. Defendants referred to the court's October 11, 2017 tentative ruling stating that plaintiff "has wrongfully withheld documents" and that plaintiff and her counsel "have engaged in repeated abuses of the discovery process for months." Defense

6

counsel's declaration stated that on October 12, 2017, plaintiff finally produced more than 1,100 probative documents that were highly damaging to her case and credibility.

Defense counsel also attached plaintiff's July 18, 2017 settlement demand. In that demand, plaintiff's counsel valued her case at $750,000. Of that total sum, plaintiff's counsel valued the rest break and the derivative wage statement and waiting period penalty claims at less than $13,000.

Plaintiff came up with a new theory for recovery of all her attorney fees in her reply to defendants' opposition to the motion for attorney fees. She asserted—for the first time—that "[d]efendants' own payroll and timekeeping records demonstrate that Plaintiff was not paid for all hours worked; and that it was part of Defendants' timekeeping scheme to unilaterally reduce/adjust Plaintiff's timesheets in order to avoid paying Plaintiff for all hours worked and all earned overtime."

The declaration of plaintiff's counsel attached copies of defendants' timekeeping spreadsheets and one of plaintiff's wage statements. Plaintiff's counsel opined that his analysis of these documents showed plaintiff "was shorted .49 total hours, and virtually all of this is overtime." Plaintiff's counsel further opined the timekeeping spreadsheets showed "unilateral downward adjustments," and "[t]here were 47.82 total hours lost to 'adjustments.'" Counsel did *not* state, in the reply papers or in any subsequent filings, when he had performed this analysis, i.e., whether he performed the analysis before filing the motion for attorney fees, or only after getting defendants' opposition asserting the focus of the litigation had been on the retaliation and wrongful termination claims.

At the January 26, 2018 hearing on the motion for fees, the court heard argument and continued the hearing for further briefing.  The parties filed additional briefs, declarations and evidentiary objections.  There were several more continuances following further hearings on the motion.

In supplemental papers, plaintiff's counsel reiterated plaintiff's position that all the time billed was inextricably intertwined with her wage and hour claims.  However, counsel reexamined the billing "to identify discrete tasks to which I can state with reasonable certainty were devotedly almost entirely to the non-wage claims," and stated he was able to identify approximately 10 percent of the hours incurred by his firm that were "devoted primarily to prosecution of the wrongful termination/retaliation claims without regard to the underlying wage issues."  Counsel reduced the fee request by 10 percent from the lodestar of $387,196 to $348,476.40, and did not request a lodestar multiplier.  In later-filed supplemental papers, plaintiff sought another $48,914 for work performed in litigating the fee application since filing that motion, for a total of $397,390.  No time records were ever supplied.

Defendants continued to assert there was no evidence that plaintiff raised, litigated, and expended attorney fees on any theory of wage liability other than meal and rest breaks for which attorney fees could not be awarded.  Defense counsel's declaration also stated that plaintiff's interpretation of the pay records was wrong, because her counsel looked at the wrong column for hours worked; and adjustments were made because of failure to clock out at the end of a shift, as confirmed on other time reports produced in discovery.

8

On July 13, 2018, without calling the case for hearing, the court granted the motion for attorney fees in the amount of $280,794 (and costs of $8,671.95) and set an order to show cause regarding dismissal for August 31, 2018. The court ruled that, although "some aspects" of plaintiff's wage statement and waiting penalty claims "are seemingly derivative of the Section 226.7 claim, Plaintiff has proffered evidence that establishes that [those claims] were also premised on timekeeping and payroll schemes . . . and Plaintiff is thusly entitled to attorneys' fees pursuant to Labor Code § 218.5. Further, the settlement agreement is broad in scope and includes all wage and hour claims."

The court found counsel's apportionment of 90 percent of the work to the underlying wage issues "sufficient for apportionment purposes," citing counsel's declaration quoted above. The court found the number of hours incurred was unreasonable, the hourly rates were high, and $280,794 was a reasonable fee award. The court did not explain how it derived that figure.

Plaintiff submitted a proposed judgment pursuant to the terms of the settlement (Code Civ. Proc., § 664.6). Defendants objected to the proposed judgment on the ground plaintiff did not request fees for an eligible claim in her initial pleading, and defendants were not given an opportunity to argue the attorney fee motion before the court, although it had been continued for hearing after defense counsel's pregnancy leave ended.

The court overruled defendants' objection and entered judgment on August 31, 2018, in the principal sum of $15,375, plus attorney fees of $280,794 and costs of $8,671.95.

9

**DISCUSSION**

**1.      A Prefatory Note**

We begin with an explanatory note.  The trial court apparently concluded (as we did in our original opinion) that to the extent plaintiff's wage statement and waiting penalty claims were derivative of her rest break claims, they could not support an attorney fee award.  Instead, the trial court justified the award by relying on evidence plaintiff proffered with her reply papers, purporting to show that her wage statement and waiting penalty claims "were *also* premised on timekeeping and payroll schemes," thus entitling plaintiff to fees on that basis.  (Italics added.)  This justification was erroneous.  As we held in our original opinion, the trial court's finding on "timekeeping and payroll schemes" was not supported by the record.[2]  *Naranjo* does not affect our conclusion on that issue, but the timekeeping issue is now beside the point.  *Naranjo*'s holding that premium pay for missed breaks constitutes wages and must be reported on wage statements and paid within statutory deadlines when an employee is discharged (*Naranjo, supra,* 13 Cal.5th at p. 102), fully justifies the trial court's attorney fee award under section 218.5.  And, of course, the court's ruling must be affirmed if it is correct on any theory.

---

[2]      We see no reason to repeat our discussion on that point.  In the trial court litigation, plaintiff made no claim for nonpayment of wages *other than* the rest break and meal period claims and the derivative penalties until filing her reply papers.  We found no evidence plaintiff's counsel ever expended any attorney time on "timekeeping and payroll schemes," except in preparation of the reply papers.

## 2. The *Naranjo* Decision

We need not discuss *Naranjo* in any detail, as its holding, described at the outset, is clear: "extra pay for missed breaks constitutes 'wages' that must be reported on statutorily required wage statements during employment (Lab. Code, § 226) and paid within statutory deadlines when an employee leaves the job (*id.*, § 203)." (*Naranjo, supra,* 13 Cal.5th at p. 102; see also *id.* at p. 112 ["an employee suing for failure to pay wages by the deadline established in [sections 201 and 202] *is* suing for nonpayment of wages for purposes of an attorney fee award under Labor Code section 218.5," citing *Kirby, supra,* 53 Cal.4th at p. 1256; *Naranjo,* at p. 117 ["missed-break premium pay constitutes wages for purposes of Labor Code section 203, and so waiting time penalties are available under that statute if the premium pay is not timely paid"]; *id.* at p. 121 ["failure to report premium pay for missed breaks can support monetary liability under section 226 for failure to supply an accurate itemized statement"].)

Here, plaintiff's complaint sought penalties, costs and attorney fees under section 226 for failing to include rest break premiums on her itemized wage statements; and waiting time penalties under sections 201 through 203 for failure to pay all wages on termination. These were claims for nonpayment of wages. Under section 218.5, the court must award the prevailing party reasonable attorney fees and costs "[i]n any action brought for the nonpayment of wages," if any party requested fees and costs at the beginning of the action (§ 218.5, subd. (a); see fn. 1), as plaintiff did.

11

### 3. Contentions and Conclusions

In defendants' briefing in this case—before the *Naranjo* decision—defendants contended the trial court erred in awarding any attorney fees to plaintiff, because her complaint did not allege any conduct that could serve as the legal basis for a fee award under section 218.5; the parties' settlement agreement provided no other basis for a fee award because plaintiff was entitled only to seek fees "consistent with applicable law"; and there was no evidence that plaintiff's counsel spent any time on any claim for nonpayment of wages.

After *Naranjo*, none of defendants' earlier arguments supports reversal of the attorney fee order. *Naranjo* establishes a clear legal basis for the award; the settlement agreement permits an award "consistent with applicable law"; and there is evidence of counsel time spent on claims for nonpayment of wages as construed in *Naranjo* (beginning, as we have seen, with the complaint). As *Naranjo* tells us, extra pay for missed breaks "constitutes wages subject to the same timing and reporting rules as other forms of compensation for work." (*Naranjo, supra,* 13 Cal.5th at p. 102.) Indeed, defendants do not argue otherwise in their supplemental brief.

Instead, defendants now offer two reasons why we should again reverse the attorney fee award. Neither of them has merit.

First, defendants say plaintiff offered "no admissible evidence" that a wage statement violation "occurred at all, and no evidence that any conceivable violation was willful." They contend their "offer to compromise"—the settlement agreement—is inadmissible "as evidence that Defendants were in fact liable on those claims," citing Evidence Code section 1152, subdivision

12

(a) (offer to compromise is inadmissible to prove liability). We are not persuaded.

Defendants agreed to a stipulated settlement, paying $15,375 "for full and final resolution" of plaintiff's wage-and-hour related claims, and "judgment pursuant to stipulation for entry of judgment" was rendered in favor of plaintiff. Plaintiff was thus the prevailing party, and section 218.5 requires the court to "award reasonable attorney's fees and costs to the prevailing party . . . ." (*Id.*, subd. (a).) The parties settled their dispute over whether defendants were in fact liable for rest break violations, wage statement violations and waiting time penalties, including whether any wage statement violations were knowing and willful, and defendants cannot now claim that, for an award of attorney fees, plaintiff must prove her case.

Second, defendants contend that in the trial court plaintiff "tacitly" abandoned "any wage-statement claim based on a rest-break violation," and expressly abandoned the claim in this court, and that this constitutes a waiver which we should enforce. We do not agree. While plaintiff came up with a new theory for recovery of her attorney fees for which there was no substantial evidence—claims of shortages in wages that were not based on rest break violations—defendants cite no evidence she "expressly abandoned" or waived the claim on appeal that wage statement violations and waiting time penalties based on failure to pay for rest breaks would *also* support her fee request. Plaintiff stated more than once in her initial respondent's brief that her causes of action were not "*solely* derivative of [her] rest period cause of action." (Italics added.) That is not a waiver of her claims based on rest break violations.

13

Defendants also argue that waiver is "particularly appropriate in this case" because plaintiff succeeded in obtaining the sizeable attorney fee award by making "a factual representation to the trial court that 90% of her attorney time was incurred litigating timekeeping theories." That is a distortion of counsel's statement. Plaintiff throughout took the position that all the time billed on her case, "including time which pertained to her wrongful termination/retaliation claims, has been inextricably intertwined with her wage & hour claims." She did not represent that 90 percent of her attorney time was spent on timekeeping theories.

Finally, defendants say the record shows "the vast majority of [plaintiff's] attorney time was incurred litigating the wrongful termination and retaliatory discharge claims that she indisputably lost"; she should not be allowed to "rewrite history" by arguing "that any significant amount of time was incurred litigating her wage-statement claim"; and consequently, we should enforce her "express waiver." As we have said, there was no "express waiver." Moreover, plaintiff consistently took the position that her unpaid wage claims were "inexorably intertwined with the Whistleblower allegations inasmuch as she contends that the complaints about wages were what led to her termination." Similarly, the trial court recounted plaintiff's argument that "the claims are intertwined because plaintiff had to establish her wage and hour claims in order to establish the reasonableness of reporting defendant's unlawful practices and policies." And, the trial court expressly accepted the declaration of plaintiff's counsel that only about 10 percent of the time spent "has been devoted primarily to prosecution of the wrongful termination/retaliation claims *without regard to the underlying*

14

*wage issues.*"  (Italics added.)  We cannot substitute our judgment on this point for that of the trial judge, who presided over this case from the outset.

## DISPOSITION

The judgment is affirmed.  Plaintiff shall recover costs on appeal.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.

15

Filed 9/12/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| RAQUEL BETANCOURT,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>OS RESTAURANT SERVICES, LLC et al.,<br><br>  Defendants and Appellants. | B293625<br><br>(Los Angeles County Super. Ct. No. BC629916)<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION** |

THE COURT:*

The opinion in the above-entitled matter filed on August 25, 2022, was not certified for publication in the Official Reports.  For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

STRATTON, P. J.          GRIMES, J.          WILEY, J.

1